## WILLIAMS *v.* CENTRAL OF GEORGIA RAILWAY CO.

A shipper of live stock entered into a special contract with the carrier, and, in consideration of a reduced freight rate and free passage of the shipper, agreed to release the carrier from any loss that might be occasioned by the animals injuring each other or themselves, or that might arise in consequence of their fright or viciousness.   The contract recited that the shipper had examined the car provided for the transportation of the stock and found it in good order and condition, and stipulated that he accepted the same and agreed that it was suitable and sufficient for the purpose intended.   *Held*:

1. Upon the trial of an action brought by the shipper against the carrier for damages, for the value of one of the animals, alleged in the petition to have died from injuries caused by a defect in the car, consisting of a crack therein in which the animal got its foot, the burden of proof was upon the plaintiff to show that such defect was not patent when he examined the car, and was, therefore, not covered by his agreement.

2. Such burden was not carried by showing merely that the crack into which the animal got its foot was the space between the slats of the car, some three and a half or four feet above the floor thereof.

Argued March 18, — Decided April 8, 1903.

Action for damages.     Before Judge Felton.     Houston superior court.     April 18, 1902.

*H. A. Mathews,* for plaintiff, cited, as to the validity of the stipulation in question, Gulf etc. R. Co. *v.* Wilhelm, 3 Tex. Civ. App. 457; 5 Am. &. Eng. Enc. L. (2d ed.) 432.

*Louis L. Brown,* for defendant, cited Civil Code, § 2276; 66 *Ga.* 438, 485; 73 *Ga.* 722; 76 *Ga.* 253; 110 *Ga.* 661; 115 *Ga.* 705; 53 Atl. 864; 12 Fed. Cas. 1066.

Fish, J.   Williams sued the Central of Georgia Railway Company for damages for the loss of a mule.   The petition alleged that the death of the mule was caused by the negligence of the defendant; that the injury from which its death resulted was occasioned by a defect in the car in which it was being transported from Atlanta to Fort Valley, "the defect consisting in a crack in the car in which the mule got his foot fastened."   Upon the trial the plaintiff put in evidence a written contract, signed by himself and the agent of the defendant, wherein the plaintiff agreed, in considera-

tion of a reduced freight rate for the car-load of live stock and free passage of himself over the defendant's road from Atlanta to Fort Valley, that he would release the defendant from any loss occasioned by the animals injuring each other or themselves, or that might arise in consequence of their fright or viciousness. This contract recited: "It is further understood that the owner or shipper has examined and found in good order and condition the car . . provided for the transportation of said live stock, and hereby accepts the same and agrees that [it is] . . suitable and sufficient for said purpose." The testimony of the plaintiff, who was the only witness introduced upon the trial, was to the effect that when the car-load of mules arrived at Fort Valley, the one for loss of which the action was brought had got its foot in the space between the slats of the car, some three and a half or four feet from the floor thereof, which caused him to fall, and the other animals in the car had trodden upon him and so injured him that he died within a few days thereafter; that the slats of the car, between which the mule's foot was caught, had to be cut away with an axe, in order to release the foot. The value of the mule was proved to be one hundred dollars. Upon the motion of the defendant, the court granted a nonsuit; to which ruling the plaintiff excepted.

As the contract recited that the plaintiff had examined the car and found it in good order and condition and had agreed that it was suitable and sufficient for the transportation of the stock, and that he had accepted it as such, the burden was upon him to show that the injury to the mule was not caused by a defect covered by his agreement. In other words, if the defect was patent — could have been easily discovered by him when he examined the car,— he must be held to have waived, by his admission and agreement, any injury which might be caused by such defect; the ordinary presumption of negligence arising against a railroad company, upon proof of the injury, not being applicable in such a case. Did the plaintiff successfully carry such burden? We think not. There was no evidence that there was any defect in the slats, or that the spaces between them were any larger than in cars of this character of standard make, or those ordinarily used for the transportation of live stock; and even had it been otherwise, it is evident that the plaintiff could easily have seen the size of the spaces between the slats. Moreover, the defendant was exempt from liability for loss or injury to the

stock caused by the nature and propensities of the animals, and had expressly contracted against loss occasioned by such causes. *Cooper* v. *Railroad Co.*, 110 *Ga.* 659. It would seem, from the height of the crack from the floor of the car, that the mule had gotten its foot caught therein from the inherent nature, vice, or propensity of the animal. It follows that the court did not err in granting a nonsuit.    *Judgment affirmed.    By five Justices.*