## MIDLAND VALLEY R. CO. v. GEORGE.

No. 1912.    Opinion Filed October 23, 1912.

(127 Pac. 871.)

1.  **CARRIERS—Delay in Freight—Liability for Damages.** Where a railroad company, by oral agreement of its agent, promises to furnish cars at a certain time, and on account of its failure so to do the freight fails to connect with a train on a connecting carrier, and the freight is damaged by the delay, the company is liable for actual damages caused by the delay.

2.  **APPEAL AND ERROR—Harmless Error—Evidence.** Where the evidence showed that a railroad company, by oral agreement of its agent, promised to furnish cars to receive cattle at a certain time, and failed to do so and failed to transport them with reasonable dispatch after it actually received them, a judgment will not be reversed because the plaintiff was permitted to testify that he received a written bill of lading after the cattle had started to their destination.

3.  **JUSTICES OF THE PEACE—Pleading—Amendment.** Where a bill of particulars, in an action brought in a justice court, alleged that a railroad company agreed in writing to furnish cars in

which cattle could be shipped at a certain hour, and the proof showed such contract was oral, the bill of particulars will be considered as amended to conform to the proof.

4.     CARRIERS—Injuries to Live Stock — Damages — Excessiveness. Where the evidence showed plaintiff's damage only slightly, if at all, exceeded $90, a verdict for $175 is excessive.

(Syllabus by Rosser, C.)

### Error from Osage, County Court;
### C. T. Bennett, Judge.

Action by A. E. George against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed on conditions.

*Edgar A. De Meules,* for plaintiff in error.

Opinion by ROSSER, C. This is a companion case to *Midland Valley Railroad Co. v. J. D. Adkins, post,* 127 Pac. 867. This action was for damages to one car of stock shipped on the same train with the stock belonging to Adkins, and the facts are exactly the same except as to the number of cattle shipped.

The bill of particulars in this case, however, alleged that the defendant by written contract agreed to ship the stock. The plaintiff was allowed to testify that he had a bill of lading for the stock from Wheeler Switch to Kansas City. He did not testify as to its contents. The admission of this evidence is assigned as error.

Evidence as to the bill of lading was not material. There is sufficient competent proof in the record to show that the defendant knew the cattle were being shipped to the Kansas City market. The evidence showed that the cars were ordered orally, and that the agent promised orally to have the cars at Wheeler Swith at eight o'clock in the morning. If the cars had been placed then and carried with reasonable dispatch, they would have made connection with the eleven a. m. train for Kansas City. The company knew they were to be taken to Kansas City. While the record does not show that any one said they were to be sold at Kansas City, the very fact that in the month of May a lot of steers were being shipped, from a country where people usually feed or pasture cattle, to a city where cattle are sold for

beef, and where there is no pasture, was sufficient to put the company on notice that they were being shipped for sale. It makes no difference whether there was a bill of lading through or not. The defendant knew the destination was Kansas City, and it was its duty to use diligence to comply with its contract to furnish the cars and to carry them with reasonable dispatch so they could be shipped promptly over the Missouri, Kansas & Texas Railway to Kansas City. This duty was the same whether the defendant issued a bill of lading to Kansas City or only to. Nelagony. Having agreed to furnish the cars at eight o'clock, so that they could connect with the Missouri, Kansas & Texas Railway at Nelagony, the defendant was bound by the contract, and no writing at all was necessary to make it liable. The liability attached before a bill of lading was issued. . The cattle were loaded and carried as far as ·Foraker before any bill of lading was issued by the company. Its' duty began when the oral contract to furnish the cars was made. Even without the previous oral contract the duty of the company· to transport would have begun when the cattle were loaded, and before a bill of lading issued. *Gulliver v. Adams Express Co.*, 38 Ill. 503; *Shelton v. Merchants' Dispatch Trans. Co.*, 36 N. Y. Super. Ct. 527; *E. L. & R. Co. v. Hall*, 64 Tex. 615; *Alabama Great So. R. Co. v. Norris*, 167 Ala. 311, 52 South. 891; *Fountain v. Wabash R. Co.*, 114 Mo. App. 676, 90 S. W. 393; *Missouri Pac. R. Co. v. Beeson*, 30 Kan. 298, 2 Pac. 496; *Texas P. R. Co. v. Nicholson*, 61 Tex. 491; *Rudell v. Ogdensburg Transit Co.*, 117 Mich. 568, 76 N. W. 380, 44 L. R. A. 415.

The evidence as to the oral agreement was not objected to. This case originated in the justice of the peace court, and under the liberal rules of pleading in such cases the bill of particulars will be considered as amended to allege facts of which there was lawful evidence. See *Holden v. Lynn*, 30 Okla. 663, 120 Pac. 246; *St. Paul Fire & Marine Ins. Co. v. Mittendorf*, 24 Okla. 651, 104 Pac. 354, 28 L. R. A. (N. S.) 651.

It is claimed that the verdict was excessive. This contention is correct. The plaintiff testified that the cattle weighed at the point of shipment 1,325 pounds, and that they weighed 1,240

pounds at Kansas City. He testified in effect that three per cent: was a normal shrinkage for the trip. He also testified that the market on which he sold was fifteen cents lower than on the previous day. A computation shows that fixing his loss according to his highest figures it only amounts to a little more than $90.

If the plaintiff will, within 40 days, enter a *remittitur* of $85, the judgment should be affirmed; otherwise it should be reversed and remanded.

By the Court: It is so ordered.