### 5155. SEABOARD AIR-LINE RAILWAY *v.* McRAE & BROTHER.

1. A stipulation in a special contract of affreightment for the transportation of live stock, that the shipper has examined the car and found it in good condition, and accepts the same and agrees that it is suitable for the purpose of transporting the live stock, is, where based upon sufficient consideration, such as a reduced rate of freight, valid and binding.

2. A shipper of live stock who accepts a contract of affreightment made in his behalf by another, and brings suit thereon for its breach, can not challenge the authority of the person who made the contract in his behalf.

3. An agreement on the part of a shipper such as that referred to in the preceding headnote amounts to a waiver of defects in the car which could have been discovered by the exercise of ordinary care, and, in a suit for damages for injuries to live stock, caused by defects in the car, the plaintiff carries the burden of showing that the defects were latent and not discoverable by the exercise of ordinary care.

DECIDED DECEMBER 9, 1913.

Appeal; from Montgomery superior court—Judge Graham. August 5, 1913.

*J. B. Geiger,* for plaintiff in error. *W. M. Lewis,* contra.

POTTLE, J. McRae & Brother sued the Seaboard Air-Line Railway to recover damages for injuries to a mule shipped in a car of live stock from Atlanta, Ga., to Ailey, Ga. The shipment was under a special contract of affreightment, made in consideration of a reduced rate of freight. The contract was signed on behalf of the plaintiffs by their agent in Atlanta. Among other things it was stated in the contract that the shipper "has examined and found in good order and condition the car or cars provided by the railroad company for the transportation of said live stock, and hereby

accepts the same and agrees that they are, as thus provided, suitable and sufficient for the purpose." It was further provided in the contract that its terms and conditions should inure to the benefit of connecting carriers, unless otherwise stipulated by them. It appeared from the evidence that the mule was injured in consequence of having stepped upon a large nail on the floor of the car at some time after the transportation began. The jury found a verdict of $100 in favor of the plaintiffs, the defendant's motion for a new trial was overruled, and it excepted.

1. Stipulations in contracts of carriage similar to that set forth in the above statement of facts have several times been held to be valid and binding when based upon sufficient consideration, such as a reduced rate of freight. *Williams* v. *Central Ry. Co.,* 117 *Ga.* 830 (43 S. E. 980) ; *Southern Ry. Co.* v. *Tolleson,* 135 *Ga.* 74 (68 S. E. 798) ; *Central Ry. Co.* v. *James,* 117 *Ga.* 832 (45 S. E. 223) ; *Southern Ry. Co.* v. *Ragsdale,* 119 *Ga.* 627 (46 S. E. 832).

2. Having accepted the benefit of the special contract of affreightment made in their behalf, and having brought suit against the carrier for a breach of that contract, the plaintiffs are not in a position to challenge the authority of the person who executed it in their behalf. *Wellborn* v. *Southern Ry. Co.,* 6 *Ga. App.* 151 (64 S. E. 491) ; *Southern Ry. Co.* v. *Parramore,* 119 *Ga.* 690 (46 S. E. 822) ; *Bell* v. *Western & Atlantic R. Co.,* 125 *Ga.* 510 (54 S. E. 532).

3. The effect of the stipulation that the shipper has examined the car and accepts it in the condition in which it is furnished is to waive all defects in the car save those which are latent and therefore not readily discoverable. *Central of Ga. Ry. Co.* v. *James,* supra. It appeared, from the evidence, that when the car reached its destination, a part of the top of the car had fallen down among the mules and had been trampled upon by them. Apparently the nail which caused the injury to the mule was in a piece of wood which thus fell down. In the motion for a new trial complaint is made that the court erred in permitting the introduction of evidence of this character in the absence of any evidence as to the condition of the car when the stock were loaded in it. It is also complained that there was no affirmative proof that the defect in the car was a latent one, and that the court refused to charge the jury that the burden was on the plaintiffs to show that

the defect was of such a character. In *Williams* v. *Central Ry. Co.,* supra, a stipulation in a contract of affreightment, similar to that now involved, was under consideration. In that case the animal was injured on account of a crack in the car, in which he had gotten his foot fastened. It was held that the burden was upon the plaintiff "to show that such a defect was not patent when he examined the car and was therefore not covered by his agreement." In the opinion it was stated that the ordinary presumption of negligence arising against a railroad company upon proof of injury was not applicable, and that the plaintiff carried the burden of showing that the defect was one which he could not readily have discovered when he examined the car. This decision seems to be decisive of the present case. No proof was offered by the plaintiffs as to the condition of the car when the stock were loaded on it. The defect complained of by the plaintiffs and shown to have existed may or may not have been discoverable by the exercise of ordinary care, and the plaintiffs carried the burden of showing that it could not have been so discovered. They could not relieve themselves by showing that they had no opportunity to inspect or examine the car, because the evidence shows that the shipment of the mules was entrusted to an agent who had the mules loaded in the car and who executed the special contract of affreightment in behalf of the plaintiffs. The evidence was not sufficient to authorize a recovery in behalf of the plaintiffs, in the absence of proof that the defect in the car, complained of by them, was one which they could not have discovered by the exercise of ordinary care.

*Judgment reversed.*